## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHAEL BOWMAN,

               Petitioner,               Case Number: 2:10-CV-13385
                                           HONORABLE NANCY G. EDMUNDS

v.

RANDALL HAAS,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Michael Bowman filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, presently incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan, challenges his convictions for first-degree murder, kidnapping, and conspiracy to commit kidnapping. He raises eight claims for habeas corpus relief. Respondent argues that several of the claims are procedurally defaulted and that all the claims are meritless. The Court finds Petitioner's claims meritless and denies habeas relief.

## I. Facts

Petitioner's convictions arise from the kidnapping and beating death of Ryan Rich, whose body was recovered from the trunk of a burning car early in the morning on June 27, 2005, outside Port Huron, Michigan. The Michigan Court of Appeals summarized the testimony adduced at trial as follows:

[D]efendant believed that the victim stole money and drugs from him and was cooperating with the police. Shortly before defendant left to meet his codefendants and the victim, a witness heard defendant remark that he was "going to kill that mother f-ker." Defendant thereafter left his valuables behind and told a witness that he had to take care of something. Defendant subsequently arrived at the garage where the victim was being held and participated in beating the victim for approximately 90 minutes, once pausing to remark that the victim was difficult to kill. The victim's body was discovered in the truck of a burning car, and was burned beyond recognition. The body had been hogtied and there was a two-inch hole in the skull, which would have taken a lot of force to inflict.

*People v. Bowman*, No. 270443, 2007 WL 3408148, *4 (Mich. Ct. App. Nov. 15, 2007).

## II. Procedural History

Following a jury trial in St. Clair County Circuit Court, Petitioner was convicted of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), kidnapping, Mich. Comp. Laws § 750.349, and conspiracy to commit kidnapping, Mich. Comp. Laws § 750.157a. He was sentenced as a fourth habitual offender to life in prison for the murder conviction, and concurrent terms of 30 to 50 years in prison for the kidnapping and conspiracy convictions.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising these claims: (i) right to due process and a fair trial violated by trial court's failure to grant a change of venue; (ii) trial counsel was ineffective for failing to object to prosecutorial vouching; (iii) right to fair trial violated by trial court's denying jury's request for rereading of testimony and counsel's failure to object was ineffective; (iv) insufficient evidence to show premeditation, secret confinement, and agreement; and (v) the cumulative effect of the errors violated due process. The Michigan Court of Appeals

2

affirmed his convictions. *People v. Bowman*, No. 270443, 2007 WL 3408148 (Mich. Ct. App. Nov. 15, 2007). Petitioner filed an application for leave to appeal in the Michigan Supreme Court. On March 24, 2008, the Michigan Supreme Court denied leave to appeal. *People v. Bowman*, 480 Mich. 1138 (Mich. 2008).

On June 4, 2008, Petitioner filed a motion for relief from judgment in the trial court, raising these claims: (i) appellate counsel was ineffective in failing to raise several ineffective assistance of counsel claims on direct appeal; (ii) convictions for first-degree murder and kidnapping violate the Double Jeopardy Clause; and (iii) presentation of perjured testimony violated the Due Process Clause. The trial court denied the motion. *People v. Bowman*, No. 05-001856-FC (St. Clair County Circuit Court June 27, 2008). Petitioner filed an application for leave to appeal the denial of his motion for relief from judgment in the Michigan Court of Appeals. The Michigan Court of Appeals denied leave to appeal. *People v. Bowman*, No. 286761 (Mich. Ct. App. Nov. 10, 2008). On August 6, 2009, the Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Bowman*, 484 Mich. 865 (Mich. 2009).

Petitioner then filed the pending habeas corpus petition. He raises these claims:

I.   Appellant's constitutional rights to due process and an impartial jury were denied by the trial courts failure to grant a change of venue.

II.  Trial counsel was constitutionally ineffective in failing to object to the prosecutor vouching for the credibility of co-defendant Nicolas Dobson by eliciting that the prosecutor has already allowed Dobson to plead guilty before trial in exchange for "truthful" testimony.

III. The trial court violated appellant's constitutional right to a fair trial by

3

denying the jurors' request for a rereading of key witness testimony in a manner which, reasonably understood, foreclosed the possibility of any rehearing of the testimony. In the alternative, trial counsel was ineffective in failing to oppose the denial.

IV.    Appellant's first-degree murder, kidnapping and conspiracy convictions violated his constitutional right to proof beyond a reasonable doubt absent sufficient evidence of premeditation, secret confinement and agreement.

V.    The defendant was denied the effective assistance of appellant counsel where counsel failed to raise issues of arguable merit on appeal where trial counsel violated the defendant of his constitutional guaranteed rights under both state and federal constitutions of 1963 art. 1 § 20, U.S. Const. Ams. VI, XIV.

(A)    The defendant was denied the effective assistance of counsel where counsel failed to object to the introduction of gruesome photographs where they were not necessary or instructive to show material facts or conditions.

(B)    The defendant was denied the effective assistance of counsel where appellate counsel failed to respond to defendant's right to prepare a standard 4 supplemental brief, Mich. Const. 1963 art 1 § 20, U.S. Const. Ams. VI, XIV.

(C)    The defendant was denied the effective assistance of counsel where counsel failed to investigate or interview defense and prosecution witnesses whose testimony would have supported the defense theory of actual innocence/mere presence. Mich. Const. 1963 art 1 § 20, U.S. Const. Ams. VI, XIV.

(D)    The defendant was denied the effective assistance of counsel where counsel failed to challenge biased juror when information of bias became known during the trial. Mich. Const. 1963 art 1 § 20, U.S. Const. Ams. VI, XIV.

(E)    Mr. Bowman was denied the effective assistance of trial counsel where counsel failed to request a hearing regarding a potentially biased juror when information of bias became known during the trial.

4

VI.     The defendant's dual convictions for both first degree murder and
        kidnapping are in violation of the double jeopardy protection against
        multiple punishment for the same offense. Mich. Const. 1963 art 1 § 15,
        U.S. Const. Am. V.

VII.    The defendant should receive a new trial where perjured testimony
        amounted to newly discovered evidence and defendant makes the required
        showing in support, Mich. Const. art § XVII, U.S. Const. Am. XIV,
        guaranteed right to due process.

VIII.   The defendant was denied a fair trial where the cumulative effect of trial
        and appellate counsel's errors created the probability where the trial and
        appeal process was violative of due process and inconsistent with fairness.
        Mich. Const. art 1 § 20, U.S. Const. Ams. V, VI, XIV.

The Court dismissed the petition because it was not timely filed. Petitioner

appealed to the Sixth Circuit Court of Appeals, which held that Petitioner was entitled to

equitable tolling of the limitations period. The Court of Appeals vacated this Court's

judgment and remanded for further proceedings. *Bowman v. Prelesnik*, No. 11-2497 (6th

Cir. March 20, 2013).

### III. Standard

The petitioner's claims are reviewed against the standards established by the

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat.

1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"

*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*,

529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute

permits a federal habeas court to 'grant the writ if the state court identifies the correct

governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)

(*quoting Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court find a state

court's application of [Supreme Court] precedent 'unreasonable,' the state court's

decision must have been more than incorrect or erroneous.  The state court's application

must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations

omitted); *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101

(2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "Section 2254(d)

reflects the view that habeas corpus is a guard against extreme malfunctions in the state

criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th

7

Cir. 1998).

## IV.  Discussion

### A.  Change of Venue

Petitioner argues that he was denied his right to due process and an impartial jury when the trial court denied his motion for change of venue because of extensive publicity and "overwhelmingly strong community feelings and bitter prejudices" garnered by the gruesomeness of the crimes.  The Michigan Court of Appeals denied this claim.

The United States Supreme Court has held that a change of venue should be granted if prejudicial pretrial publicity jeopardizes a defendant's right to a fair trial by an impartial jury.  *Irvin v. Dowd*, 366 U.S. 717, 722-24 (1961).  Prejudice resulting from pretrial publicity can be presumed or actual.  *Murphy v. Florida*, 421 U.S. 794, 799 (1975).  Prejudice is presumed when adverse pretrial publicity is so pervasive or the influence of the media creates such a "circus atmosphere" in the courtroom that "[t]he proceedings [are] entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob." *Id.* at 799.  Courts presume prejudice in such cases because "adverse pretrial publicity can create such a presumption of prejudice in a community that jurors' claims that they can be impartial should not be believed." *Patton v. Yount*, 467 U.S. 1025, 1031 (1984).  Cases of presumed prejudice from pretrial publicity are extremely rare, *Campbell v. Bradshaw*, 674 F.3d 578, 593 (6th Cir. 2012), occurring only when "an inflammatory circus-like atmosphere pervades both the courthouse and the surrounding community."

8

*Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007).

Where the circumstances surrounding a case were not so egregious as to invoke a

presumption of prejudice, a petitioner can show that the trial court erred in denying a

request for change of venue by demonstrating actual prejudice. *Murphy*, 421 U.S. at 800-

01. The "primary tool" for determining whether actual prejudice arose is a "searching

voir dire of the prospective jurors." *Ritchie v. Rogers*, 313 F.3d 948, 962 (6th Cir. 2002).

Here, the Michigan Court of Appeals denied Bowman's claim, stating:

> In areas with relatively small jury pools, a defendant is entitled to a change
> of venue if there is such "unrelenting prejudicial pretrial publicity [that] the
> entire community will be presumed both exposed to the publicity and
> prejudiced by it." *People v. Jendrzejewski*, 455 Mich. 495, 501; 566 NW2d
> 530 (1997), quoting *Mu'Min v. Virginia*, 500 U.S. 415, 442 n 3; 111 S Ct
> 1899; 114 L.Ed.2d 493 (1991).

> In this case, defendant did not submit any exhibits in support of his motion
> for change of venue, and the trial court observed that media coverage had
> not been unusually intense. On this record, the trial court did not abuse its
> discretion in determining that a change of venue was not justified.
> *Jendrzejewski*, *supra* at 500.

> Moreover, the trial court denied defendant's motion without prejudice,
> stating that defendant could renew the motion at trial if jury voir dire
> revealed that a fair and impartial jury could not be seated. As our Supreme
> Court observed in J*endrzejewski*, *id*. at 511, "[a]s an alternative method of
> determining whether community prejudice resulting from publicity may
> have unconsciously infected jurors who were seated, the Court has
> sometimes noted how many non-seated members of the venire admitted to
> disqualifying prejudice." (Internal quotations and citations omitted).
> Because defendant did not renew his motion for a change of venue at trial,
> however, any claim that a change of venue was warranted based on the
> outcome of jury voir dire is unpreserved. This Court reviews unpreserved
> issues for plain error affecting substantial rights. *People v. Carines*, 460
> Mich. 750, 763; 597 N.W.2d 130 (1999).

> During voir dire, only 11 of the 25 prospective jurors admitted to having heard media coverage about the case, and only four of those jurors admitted to a disqualifying prejudice. This is far less than the percentage of jurors in *Jendrzejewski*, in which the Court found that the defendant failed to show a community sentiment so poisoned against the defendant that a change of venue was required. *Jendrzejewski*, *supra* at 511. Further, defense counsel in this case exercised only five of his twelve peremptory challenges, and expressed that he was "very satisfied" with the jury chosen. On this record, there is no basis for concluding that a change of venue was required.

*Bowman*, 2007 WL 3408148 at *1.

The *voir dire* transcript in this case shows that the trial court did not err in denying Petitioner's motion. Although there may have been some news articles in the local newspaper relating to the case, juror exposure to those accounts did not establish a presumption that the petitioner was denied a fair trial because of pretrial publicity. The potential jurors in this case were questioned by the attorneys and the court to determine if they could be impartial and assess their exposure to news reports of the crime. The four jurors who expressed a disqualifying prejudice were excused and that number is far less than that which would show a "pattern of deep an bitter prejudice shown to be present throughout the community." *Irvin*, 366 U.S. at 727 (internal citations and quotation marks omitted).

The Court concludes that Petitioner failed to show a community-wide swell of animus toward him which would trigger a presumption that the setting of the trial was prejudicial, nor has he shown actual prejudice. The Court shall deny habeas relief on this claim.

## B.  Ineffective Assistance of Trial Counsel

10

Petitioner asserts several claims of ineffective assistance of counsel.  He argues that trial counsel was ineffective for: (i) failing to object to prosecutorial vouching; (ii) failing to object to the admission of gruesome photographs of the victim; (iii) failing to investigate and call witnesses; and (iv) failing to object to or request a hearing regarding juror bias.  He argues that appellate counsel was ineffective in failing to assist him with a Standard 4 brief and for failing to raise issues of merit on direct appeal.

Respondent argues that several of Petitioner's ineffective assistance of counsel claims are procedurally defaulted.  The Court finds it unnecessary to address the question of procedural default.  It is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  Application of a procedural bar would not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  *Id.* at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at

11

687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  A court's review of counsel's performance must be "highly deferential."  *Id.* at 689.  Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*.  *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009).  "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold."  *Id.* at 123 (internal quotation omitted).

First, Petitioner claims that his attorney was ineffective in failing to object when the prosecutor vouched for the credibility of Nicholas Dobson.  The prosecutor elicited testimony from Dobson that Dobson had pleaded guilty to second-degree murder pursuant to a plea agreement that required him to provide truthful testimony.  The Michigan Court of Appeals held that there was no basis for counsel to object to the prosecutor's questions because the questions did not amount to improper vouching where the prosecutor did not intimate that she had some special information, not disclosed to the jury, that the witness was testifying truthfully.  *Bowman*, 2007 WL 3408148 at *2.

"'Improper vouching occurs when a prosecutor supports the credibility of a

12

witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness.'" *U.S. v. Trujillo*, 376 F.3d 593, 607 (6th Cir. 2004), *quoting U.S. v. Martinez*, 253 F.3d 251, 253-54 (6th Cir. 2001). In *Trujillo*, the prosecutor asked one prosecution witness whether her plea agreement required her "truthful cooperation." *Id.* at 608. Another prosecution witness testified that her plea agreement required her to "tell the truth." *Id.* The Sixth Circuit Court of Appeals held that the prosecutor's questions to these two witnesses "merely encompassed the terms of [their] plea agreements which this Court has held to be permissible," and, therefore, did not amount to improper vouching. *Id.* at 609.

In this case, the prosecutor's examination of Dobson merely asked him to confirm the terms of his plea agreement. The prosecutor did not imply any specialized knowledge of whether Dobson testified truthfully. Where there was no improper vouching, the state court's finding that counsel was not ineffective in failing to raise a futile objection was not contrary to or an unreasonable application of Supreme Court precedent.

Next, Petitioner argues that counsel was ineffective in failing to object to the admission of gruesome photographs of the victim. Under Michigan law, gruesomeness alone is not a cause to exclude photographs. *People v. Mills*, 450 Mich. 61, 76 (Mich. 1995). "[I]f photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors." *Id.* (quotation omitted). The relevant inquiry is "always

13

whether the probative value of the photographs is substantially outweighed by unfair prejduice." *Id.*

Here, the prosecutor admitted only two photographs of the victim. They were admitted during the testimony of the pathologist who performed the autopsy. The photographs allowed the pathologist to reference and explain his autopsy report. There is no indication that any unfair prejudice resulted from admission of these photographs such that the trial court would have sustained an objection. Counsel cannot be found ineffective for failing to raise a futile objection and habeas relief is denied on this claim.

Next, Petitioner argues that counsel was ineffective in failing to investigate or interview defense and prosecution witnesses whose testimony would have supported the defense theory of actual innocence/mere presence. First, Petitioner argues that counsel should have called Stewart Ginnetti as a witness and attaches an affidavit from Ginnetti, dated December 14, 2007. In the affidavit, Ginnetti, who is serving a life sentence for the first-degree murder of Ryan Rich, states that Petitioner had no knowledge of the plan to kill Rich, and did not assist Ginnetti in any way. Ginnetti also states that he convinced Dobson to testify against Rich and told Dobson what to say in his testimony. Ginnetti's affidavit was executed after his conviction was affirmed by the Michigan Court of Appeals. *See People v. Ginnetti*, No. 268182, 2007 WL 2711237 (Mich. Ct. App. Sept. 18, 2007). Thus, Ginnetti had nothing to lose by signing the affidavit. In addition, during Petitioner's trial, Ginnetti was called to the stand outside the presence of the jury to establish whether he would invoke his Fifth Amendment privilege. He testified that it

14

was his intention to invoke his privilege against self-incrimination if called to testify. Therefore, counsel was unable to call him as a witness.  Finally, in a videotaped interview with law enforcement, introduced into evidence at Ginnetti's trial, Ginnetti admitted that he lured Rich to a garage, tackled him, bound him with tape, and turned him over to Petitioner for a beating.  *See People v. Ginnetti*, No. 268182, 2007 WL 2711237, *1 (Mich. Ct. App. Sept. 18, 2007).  In light of this videotape, even if Ginnetti would not have invoked his Fifth Amendment privilege, Ginnetti would not have been a witness favorable to the defense.

With respect to the remaining witnesses Petitioner claims defense counsel failed to call, Petitioner fails to show that counsel was ineffective.  "The failure to call favorable witnesses can amount to ineffective assistance where it results in prejudice to the defense."  *Pillette v. Berghuis*, 408 F. App'x 873, 884 (6th Cir. 2010).  But if a witness does not possess exculpatory information, defense counsel has no obligation to call that witness to testify.  *Id.*  The Court's "concern is not to decide, using hindsight, what [it] think[s] would have been the best approach at trial. Instead, [the Court] consider[s] only if the approach ultimately taken was within 'the wide range of reasonable professional assistance' given the circumstances."  *English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010) *quoting Strickland*, 466 U.S. at 689.  Here, Petitioner presents no affidavit or any other evidence establishing what these witnesses would have said.  In the absence of any such offering, Petitioner is unable to establish prejudice. *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on

15

counsel's failure to call witnesses where a petition did not "introduce[] affidavits or any other evidence establishing what they would have said."). Habeas relief is denied on this claim.

Petitioner argues that trial counsel was ineffective in failing to move for a hearing or disqualification of a potentially biased juror. Petitioner claims that, following a lunch break during the trial, a juror alleged that his father, Michael Bowman, Sr., looked menacingly toward jurors who were dining at the same restaurant. The only support Petitioner provides for this event is a letter dated March 10, 2008 and purportedly signed by his father. The letter, addressed "To whom it may concern," states that when Bowman, Sr., returned to the courthouse after lunch, he was led into a security office. The trial judge, prosecutor, defense counsel, and several deputies were present. Bowman, Sr., was advised of the juror's complaint and cautioned that if the offense was repeated he would be removed from the courtroom and possibly charged with jury tampering. Bowman, Sr., further states that the juror who made the complaint also looked directly at him and smiled when the jury's verdict was announced. Petitioner argues that his attorney should have requested a hearing or dismissal of the juror in response to these events.

Petitioner provides no evidence to substantiate the allegations contained in his father's letter. The letter suffers from credibility problems. It is dated two years after the trial. Neither Petitioner nor his father provide any explanation for the delay. In addition, the letter and notary signature are dated two weeks apart. A petitioner bears the burden of

16

showing ineffective assistance of counsel.  Petitioner's father's affidavit is simply insufficient to establish that these events occurred or that counsel was ineffective.  Habeas relief is denied.

Finally, Petitioner argues that his appellate attorney was ineffective in failing to assist him in the filing of a Standard 4 brief.  A criminal defendant has no federal constitutional right to self-representation on direct appeal from a criminal conviction. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 163 (2000).  The Supreme Court has rejected the idea that the right to self-representation on appeal could be grounded in the Due Process Clause [of the Fourteenth Amendment], because "under the practices that prevail in the Nation today, however, we are entirely unpersuaded that the risk of either disloyalty or suspicion of disloyalty is a sufficient concern to conclude that a constitutional right of self-representation is a necessary component of a fair appellate proceeding." *Martinez*, 528 U.S. at 161.  There is no constitutional entitlement to submit a pro se appellate brief on direct appeal from a criminal conviction in addition to a brief submitted by appellate counsel.  *See McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000).  By accepting the assistance of counsel, the criminal appellant waives his right to present pro se briefs on direct appeal.  *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir.1996).  Thus, any failure by appellate counsel to assist in the submission of a pro se brief on behalf of Petitioner does not present a constitutional question.

## C.  Denial of Jury's Request to Rehear Testimony

In his third habeas claim, Bowman argues that the trial court violated his right to a

fair trial by denying the jury's request to have the testimony of several witnesses read back during deliberations.  Alternatively, he argues that counsel was ineffective in failing to object to the trial court's denial.

There is no federal constitutional law which requires that a jury be provided with a witness's testimony.  *See Bradley v. Birkett*, 192 F. App'x 468, 477 (6th Cir. 2006).  No United States Supreme Court decision requires judges to re-read testimony of witnesses or to provide transcripts of their testimony to jurors upon their request.  *See Friday v. Straub*, 175 F. Supp. 2d 933, 939 (E.D. Mich.2001). A habeas petitioner's claim that a state trial court violated his right to a fair trial by refusing to grant a jury request for transcripts is therefore not cognizable in a habeas proceeding.  *Bradley*, 192 F. App'x at 477; *Spalla v. Foltz*, 788 F.2d 400, 405 (E.D. Mich. 1986).  In addition, the record shows that the jury made their request only approximately 30 minutes after deliberations commenced.  The trial court did not foreclose the possibility of providing the testimony later during deliberations.

Petitioner also argues that counsel was ineffective in waiving any claim related to the trial court's decision to instruct jurors to rely on their collective memories and for not objecting to the substance of the court's instruction.  The Michigan Court of Appeals denied this claim, reasoning that, with the exception of Angela Stockwell's testimony, all of the requested testimony was damaging to Petitioner and that Stockwell's testimony, while not harmful, was not particularly credibly and was irrelevant to any elements of the crime.  *Bowman*, 2007 WL 3408148 at *3.  "Counsel is strongly presumed to have

18

rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Petitioner has not shown that the decision of the state court was contrary to or an unreasonable application of *Strickland*.

**D. Sufficiency of the Evidence Claim**

Petitioner's fourth habeas claim challenges the sufficiency of the evidence

presented to sustain his convictions.  Specifically, he argues that the evidence presented

was insufficient to establish the premeditation element of first-degree murder, the secret

confinement element of kidnapping, and the agreement element of conspiracy.

"[T]he Due Process Clause protects the accused against conviction except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, review

of a sufficiency of the evidence challenge must focus on whether "after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v.

Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  In the habeas context, "[t]he

*Jackson* standard must be applied 'with explicit reference to the substantive elements of

the criminal offense as defined by state law.'"  *Brown v. Palmer*, 441 F.3d 347, 351 (6th

Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16)).

"Two layers of deference apply to habeas claims challenging evidentiary

sufficiency."  *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v.

Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether,

viewing the trial testimony and exhibits in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt."  *Brown*, 567 F.3d at 205, (citing *Jackson,* 443 U.S. at 319).  Second, if

20

the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* Indeed, the Jackson standard is "exceedingly general" and therefore Michigan courts are afforded "considerable leeway" in its application.  *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011).

"A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010), (quoting *Jackson*, 443 U.S. at 326).

## 1. First-Degree Premeditated Murder

Under Michigan law, "[in] order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate."  *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995).  Premeditation may be inferred by the circumstances surrounding the killing.  *People v. Marsack,* 586 N.W.2d 234, 371 (Mich. Ct. App. 1998).

The Michigan Court of Appeals held that sufficient evidence was presented to

sustain the petitioner's conviction for first-degree murder:

> According to witnesses at trial, defendant believed that the victim stole money and drugs from him and was cooperating with the police.  Shortly before defendant left to meet his codefendants and the victim, a witness heard defendant remark that he was "going to kill that mother f-ker." Defendant thereafter left his valuables behind and told a witness that he had to take care of something.  Defendant subsequently arrived at the garage where the victim was being held and participated in beating the victim for approximately 90 minutes, once pausing to remark that the victim was difficult to kill.  The victim's body was discovered in the truck of a burning car, and was burned beyond recognition.  The body had been hogtied and there was a two-inch hole in the skull, which would have taken a lot of force to inflict.
>
> There was ample time for reconsideration between the time when defendant initially announced his intention to kill the victim, and the act of killing. There was also sufficient time for a second look between the time when defendant remarked that the victim would not die, and the eventual killing. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant killed the victim with premeditation and deliberation.

*Bowman*, 2007 WL 3408148 at *4.

The state appellate court applied the proper standard and thoroughly considered the evidence of Petitioner's guilt.  The state court considered Petitioner's remark that he would kill Rich, the extended time over which the beating occurred, and Petitioner's expression of frustration at the length of time it took to kill Rich.  Under Michigan law, "[t]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem."  *People v. Morrin*, 31 Mich. App. 301, 329, 187 N.W.2d 434, 449 (1971).  Although the minimum time required to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action

should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *People v. Vail*, 393 Mich. 460, 469, 227 N.W.2d 535, 539 (1975), *overruled on other grounds by People v. Graves*, 458 Mich. 476, 581 N.W.2d 229 (1998). "[A]n opportunity for a 'second look' may be merely seconds, minutes, or hours, dependant on the totality of the circumstances surrounding the killing." *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001) (citing *People v. Berthiaume*, 59 Mich. App. 451, 456, 229 N.W.2d 497 (1975)).  The evidence presented, viewed most favorably to the prosecution, was sufficient for the Michigan Court of Appeals to reasonably find that Petitioner was guilty of first-degree premeditated murder.

## 2. Kidnapping

Next, Petitioner claims that the prosecution failed to prove beyond a reasonable doubt the "secret confinement" element of kidnapping.  Under the statute in effect at the time of Petitioner's crime, a person is guilty of forcible confinement kidnapping if he "wilfully, maliciously, and without lawful authority shall ... secretly confine or imprison any other person within this state against his will." *Bowman*, 2007 WL 3408148 at *4 (quotation omitted).  Further, the secret confinement does not require "proof of total concealment and complete isolation whereby the victim is rendered invisible to the entire world." *Id.*

The Michigan Court of Appeals held that sufficient evidence was presented to show secret confinement, citing this evidence: the victim was unable to communicate his plight to others because he was tied up and held in a garage; those who knew of his plight

23

kept it secret; music was used to conceal the sounds of the beating; and several co-defendants kept watch to ensure that nobody approached the garage. *Id.* at 5. The decision of the Michigan Court of Appeals easily passes scrutiny under the deferential AEDPA standard, as the appellate court applied the correct constitutional test, relied on facts amply supported in the record, and did not unreasonably apply clearly established constitutional law.

### 3. Conspiracy to Kidnap

Finally, Petitioner argues that insufficient evidence was presented to find him guilty of conspiracy to kidnap. Specifically, he argues that there was no proof of an agreement.

Michigan law defines a conspiracy as "a partnership in criminal purposes." *People v. Blume*, 443 Mich. 476, 481 (1993) (internal quotations and citations omitted). "To create a conspiracy, two or more individuals must have voluntarily agreed to effectuate the commission of a criminal offense." *Bowman*, 2007 WL 3408148 at *5. "The crime is complete upon formation of the agreement." *Id.* Petitioner argues that, here, there was no evidence presented of any planning or forethought between any two people. He argues that the crime just happened without prior agreement.

The Michigan Court of Appeals found sufficient evidence was presented to establish that Bowman "orchestrated a plan with his codefendants, to lure the victim to the Hills' garage, for the purpose of tying him up, putting him inside the trunk of a car, and driving him out to the country." *Id.* According the state court's findings of fact a

24

presumption of correctness, this Court concludes that the Michigan Court of Appeals'
decision that sufficient evidence was presented to prove the conspiracy conviction did not
"result[] in a decision that . . . involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §
2254(d)(1).  Petitioner is not entitled to federal habeas corpus relief with respect to this
claim.

### E.  Newly-Discovered Evidence

Petitioner argues that newly discovered evidence, in the form of witness affidavits,
entitles him to a new trial.  He presents the affidavits of Nicholas Dobson and Stewart
Ginnetti.  Dobson's affidavit states that he perjured himself when he gave testimony
incriminating Petitioner.  He denies Petitioner's involvement in the murder and claims
that Ginnetti helped him to concoct a false story implicating Petitioner.  Ginnetti's
affidavit, as discussed above, also exonerates Petitioner from any involvement in the
crime.

If Petitioner intends to assert a free-standing actual innocence claim, this claim is
not cognizable on habeas review.  An actual innocence claim does not constitute a
constitutional claim in itself.  *See Herrera v. Collins*, 506 U.S. 390, 404-05 (1993), *cited
in Schlup v. Delo*, 513 U.S. 298, 314 (1995).  The Sixth Circuit has interpreted *Herrera v.
Collins* to hold that federal courts must not make independent determinations of guilt or
innocence in habeas cases.  *See Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005).  The
function of a federal court reviewing a habeas corpus petition is to ensure that the

petitioner is not imprisoned in violation of the constitution, not to correct errors of fact.

*Herrera*, 506 U.S. at 400.

To the extent that Petitioner argues that the prosecution knowingly presented false

testimony, this claim is also meritless.  A false-testimony claim falls under the *Brady*

disclosure doctrine, which requires the government to disclose evidence favorable to a

defendant if it is "material either to guilt or to punishment."  *Brady v. Maryland*, 373 U.S.

83, 87, 83 S. Ct. 1194 (1963).  The "contours of [a false-testimony] claim were

predominantly shaped by two Supreme Court cases: *Napue v. Illinois*, 360 U.S. 264, 269-

72, and *Giglio v. United States*, 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104

(1972)."  *Brooks v. Tenn.*, 626 F.3d 878, 894 (6th Cir. 2010).

The Sixth Circuit has developed a three-part test for determining if the prosecution

has committed a *Brady–Napue–Giglio* violation:

> The knowing use of false or perjured testimony constitutes a denial of due
> process if there is any reasonable likelihood that the false testimony could
> have affected the judgment of the jury.  In order to establish prosecutorial
> misconduct or denial of due process, the defendants must show (1) the
> statement was actually false; (2) the statement was material; and (3) the
> prosecution knew it was false.  The burden is on the defendants to show that
> the testimony was actually perjured, and mere inconsistencies in testimony
> by government witnesses do not establish knowing use of false testimony.

*Id.* at 894-95, *quoting Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

Here, Petitioner fails to establish that the prosecution presented false testimony

and, even if the testimony was false, he failed to show that the prosecution knew it was

false. "Recanting affidavits and witnesses are viewed with extreme suspicion by the

26

courts." *Byrd v. Collins*, 209 F.3d 486, 508 n.16 (6th Cir. 2000) (quotation omitted). *See also Welsh v. Lafler*, No. 10-1467, 444 F. App'x 844, 850 (6th Cir. 2011) (trial witness's sworn recantation must be viewed with caution); *Bower v. Curtis*, No. 03-1821, 118 F. App'x 901, 908 (6th Cir. Dec. 17, 2004) ("The recanting of trial testimony by prosecution witnesses is typically viewed with the 'utmost suspicion.'") (internal quotation omitted). Moreover, "[e]ven if accepted, a post-trial recantation is generally not sufficient to grant habeas relief absent constitutional error." *Bower*, 118 F. App'x at 908.

Petitioner rests his argument on Dobson and Ginnetti's affidavits. In his affidavit, Dobson recanted the testimony given at Petitioner's trial implicating Petitioner. Ginnetti's affidavit contradicts his custodial statement which implicated Petitioner. Petitioner has not shown that Dobson's and Ginnetti's earlier statements inculpating him were actually false. While the affidavits contradict Dobson's testimony and Ginnetti's custodial statement, Petitioner provides no arguable basis for finding the recanting affidavits, executed almost three and two years, respectively, after the trial under unknown circumstances, more credible than Dobson's trial testimony or Ginnetti's custodial statement. Standing alone, these affidavits fail to show that the prosecution presented perjured testimony.

### F. Cumulative Effect of Alleged Errors

In his final claim, Petitioner alleges that he is entitled to habeas relief because the cumulative effect of trial errors deprived him of a fair trial and due process of law. The Michigan Court of Appeals rejected this claim, stating that reversal under a

27

cumulative-error theory was unwarranted.

On habeas review, a claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.2005)), *cert. denied sub nom Sheppard v. Robinson*, — U.S. —, 132 S.Ct. 2751 (2012). Therefore, Petitioner is not entitled to relief on this claim.

## V.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that a court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition does not state a claim upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

## VI.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas

28

corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED**

**WITH PREJUDICE.**


                                             s/ Nancy G. Edmunds
                                             NANCY G. EDMUNDS
                                             UNITED STATES DISTRICT JUDGE
DATE: April 7, 2015


                              CERTIFICATION

  I hereby certify that a copy of this Order was sent by electronic means/U.S. Mail to counsel/parties of record on this 7th day of April, 2015.

                                             s/ Carol J. Bethel
                                             Case Manager

29